SEYFARTH SHAW LLP
D. Ward Kallstrom, State Bar No. 76937
e-mail: wkallstrom@seyfarth.com
Kevin J. Lesinski, State Bar No. 110862
e-mail: klesinski@seyfarth.com
Jonathan A. Braunstein, State Bar No. 227322
e-mail: jbraunstein@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, CA 94105-2930
Tel:   415.397.2823
Fax:   415.397.8549

LEONARD CARDER LLP
Christine S. Hwang, State Bar No. 184549
e-mail: chwang@leonardcarder.com
1188 Franklin Street, Suite 201
San Francisco, CA 94109
Tel:   415.771.6400
Fax:   415.771.7010

MORGAN, LEWIS & BOCKIUS LLP
James N. Penrod, State Bar No. 43030
e-mail: jpenrod@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:   415.442.1000
Fax:   415.442.1001

Attorneys for ILWU-PMA Welfare Plan and
ILWU-PMA Welfare Plan Trustees

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA– SOUTHERN DIVISION

| | |
|---|---|
| LAWRENCE SAKS, M.D., dba, RECONSTRUCTIVE SURGERY ASSOCIATES, dba, RECONSTRUCTIVE SURGERY AFFILIATES; and MADISON PARK SURGERY AND LASER CENTER, dba, MADISON PARK SURGERY AFFILIATES,<br><br>Plaintiffs,<br><br>vs.<br><br>INTERNATIONAL LONGSHORE & WAREHOUSE UNION - PACIFIC MARITIME ASSOCIATION BENEFIT PLANS; and DOES 1 to 200, Inclusive,<br><br>Defendants. | Case No. 2:09-cv-02885-JAK-Ex<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ILWU-PMA WELFARE PLAN'S AND ILWU-PMA WELFARE PLAN TRUSTEES' MOTION FOR ATTORNEYS' FEES**<br><br>Date:          October 7, 2013<br>Location:   Courtroom 750<br>Time:         8:30 a.m.<br>Judge:        Hon. John A. Kronstadt |

1  ILWU-PMA WELFARE PLAN, AND
   ILWU-PMA WELFARE PLAN
2  TRUSTEES,

3              Counter-Plaintiffs,

4       vs.

5  LAWRENCE SAKS, M.D., dba,
   RECONSTRUCTIVE SURGERY
6  ASSOCIATES, dba,
   RECONSTRUCTIVE SURGERY
7  AFFILIATES; and MADISON PARK
   SURGERY AND LASER CENTER, dba,
8  MADISON PARK SURGERY
   AFFILIATES, DOES 300-350,
9
              Counter-Defendants.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................ 1

II.     SUMMARY OF CLAIMS, FACTS AND FINDINGS ..................... 1

III.    PROCEDURAL HISTORY ......................................................... 2

IV.     ATTORNEYS' FEES SHOULD BE AWARDED UNDER ERISA ............ 7

        A.    Legal Standard for an Award of Attorneys' Fees Under ERISA ........ 7

        B.    The Plan and the Trustees Have Succeeded on the Merits Against Saks and Madison Park ........................................ 9

        C.    The *Hummell* Factors Favor an Attorneys' Fees Award to the Plan and the Trustees ................................................ 10

              1.    Saks' and Madison Park's Culpability and Bad Faith.............. 11

              2.    Saks and Madison Park Have Not Demonstrated an Inability to Satisfy a Fee Award ................................ 12

              3.    An Appropriate Award of Fees Would Strongly Deter Future Health Care Fraud and Abuse ....................... 12

              4.    An Award of Attorneys' Fees Would Benefit ERISA Plan Participants Because it Would Increase Plan Assets Available to Pay Legitimate, Covered Claims ..................... 12

              5.    The Relative Merits Weigh Heavily in Favor of an Attorneys' Fees Award ........................................... 13

        D.    The Requested Award of Attorneys' Fees is Reasonable................... 14

              1.    The Loadstar-Adjustment Method ........................................... 14

              2.    The Number of Hours Spent Was Reasonable......................... 15

              3.    Counsel's Hourly Rates Are Reasonable ................................ 17

              4.    The Court Should Set an Award of Fees in Excess of the Schedule Set Forth in Local Rule 55-3 For Prosecuting the Counter-Claims Against Madison Park to Default Judgment................................................................... 19

V.      THE COURT SHOULD USE ITS INHERENT POWERS TO AWARD THE PLAN AND THE TRUSTEES THEIR ATTORNEYS' FEES........... 20

VI.     CONCLUSION ........................................................................ 22

i

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Aetna Health Inc. v. Davilla,*
542 U.S. 200 (2004) ........................................................................ 3

*Blackwell v. Foley*,
724 F. Supp. 2d 1068 (N.D. Cal. 2010) ........................................ 10

*Carpenters S. Cal. Admin. Corp. v. Russell*,
726 F.2d 1410 (9th Cir.1984) ........................................................ 10

*Carson v. Billings Police Dep't,*
470 F.3d 889 (9th Cir.2006) .......................................................... 15

*Chambers v. NASCO*, Inc.,
501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) .................... 20

*Cline v. Industrial Maint. Eng'g & Contracting Co.*,
200 F.3d 1223 (9th Cir.2000) .......................................................... 8

*Danning v. Lavine,*
572 F.2d 1386 (9th Cir. 1978) ...................................................... 10

*Dine v. Metro. Life Ins. Co.*,
2011 U.S. Dist. LEXIS 141975 (C.D. Cal. Dec. 9, 2011) ............... 18

*Elliot v. Fortis Benefits Ins. Co.*
337 F.3d 1138 (9th Cir. 2003) ......................................................... 9

*Estate of Shockley v. Alyeska Pipeline,*
130 F.3d 403 (9th Cir.1997) ........................................................ 8, 9

*Fink v. Gomez,*
239 F.3d 989 (9th Cir.2001) .......................................................... 21

*Hardt v. Reliance Standard Life Ins. Co.*,
560 U.S. 242, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) .................. 8

*Hensley v. Eckerhart,*
461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ........... 14, 15, 16

ii

*Honolulu Joint Apprenticeship & Training Committee of United Ass'n Local Union No. 675 v. Foster,*
  332 F.3d 1234 (9th Cir. 2003) .................................................................. 8

*Hummell v. S.E. Rykoff & Co.,*
  634 F.2d 446 (9th Cir.1980) .......................................... 9, 10, 11, 12, 13

*In re Deville,*
  290 B.R. 483 (9th Cir. 2002) .................................................................. 21

*In re Rainbow Magazine, Inc. v. Unified Capital Cor*p.,
  77 F.3d 278 (9th Cir. 1996) .................................................................... 21

*IO Group, Inc. v. Jordan*,
  2010 U.S. Dist. LEXIS 61722 (N.D. Cal. May 27, 2010) ....................... 10

*Marin Gen. Hosp. v Modesto & Empire Traction Co.,*
  581 F.3d 941 (9th Cir. (Cal.) 2009) ......................................................... 3

*Mark Industries, Ltd. v. Sea Captain's Choice, Inc.,*
  50 F.3d 730 (9th Cir. 1995) .................................................................... 21

*McElwaine v. U.S. West, Inc.,*
  176 F.3d 1167 (9th Cir.1999) ................................................................. 14

*Metropolitan Life Ins. Co. v. Taylor*
   481 U.S. 58 (1987) ................................................................................. 3

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) ................................................................ 15

*Nash v. Life Ins. Co. of North America,*
  2011 WL 2493738 (S.D. Cal.) ..................................................... 9, 14, 15

*Parker v. Vulcan Materials Co. Long Term Disability Plan,*
  2012 U.S. Dist. LEXIS 36724 (C.D. Cal. Feb. 16, 2012) ....................... 18

*Plumber, Steamfitter & Shipfitter Indus. Pension Plan & Trust v. Siemens Building Technologies Inc.,*
  228 F.3d 964 (9th Cir. 2000) ................................................................... 7

*Pomerleau v. Health Net of Cal., Inc.,*
  2012 U.S. Dist. LEXIS 164275 (C.D. Cal. Nov. 15, 2012) ...................... 9, 14, 18

iii

*Roadway Express, Inc. v. Piper*,
   447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) ...................................... 21

*Simona v. Glendale Nissan/Infiniti Disability Plan*,
   608 F.3d 1118 (9th Cir.2010) ............................................................................... 9

*Tolentino v. Friedman*,
   46 F. 3d 645 (7th Cir. 1995) ............................................................................... 17

*Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland*
   *Ins. Co.*,
   460 F.3d 1253 (9th Cir. 2006) ............................................................................ 16

*United Steelworkers v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir.1990) ............................................................................... 17

*Van Gerwen v. Guarantee Mut. Life Co.*,
   214 F.3d 1041 (9th Cir.2000) ............................................................................ 14

*Welch v. Metro. Life Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007) ...................................................................... 15, 17

**STATE CASES**

*Californians for Responsible Toxics Mgmt. v. Kizer*,
   211 Cal. App. 3d 961 (1989) ............................................................................. 10

*Serrano v. Unruh*,
   32 Cal.3d 621 (1982) .......................................................................................... 16

**FEDERAL STATUTES**

28 U.S.C. § 1331 ................................................................................................. 2, 4

28 U.S.C. § 1367 ................................................................................................. 2, 4

28 U.S.C. § 1441 .................................................................................................... 4

28 U.S.C. § 1927 ............................................................................................. 20, 21

29 U.S.C. § 1001 .................................................................................................... 2

29 U.S.C. § 1002(3)(1) ........................................................................................... 2

29 U.S.C. § 1002(3)(3) ........................................................................................... 2

Memorandum of Points and Authorities ISO
Motion for Attorneys' Fees / 09-cv-02885-JAK-Ex

29 U.S.C. § 1002(16)(A)(i) ........................................................................ 7

29 U.S.C. § 1002(21)(A) ........................................................................... 7

29 U.S.C. § 1132(a) ............................................................................... 2, 3

29 U.S.C. § 1132(e) .................................................................................... 2

29 U.S.C. § 1132(g)(1) ......................................................................... 1, 2, 8

29 U.S.C. § 1144 ......................................................................................... 2

29 U.S.C. § 1144(a) .................................................................................... 3

ERISA § 3(1) ............................................................................................... 2

ERISA § 3(3) ............................................................................................... 2

ERISA § 3(16)(A)(i) .................................................................................... 7

ERISA § 3(21)(A) ....................................................................................... 7

ERISA § 502(a)(1)(B) .............................................................................. 2, 3

ERISA § 502(a)(3) ............................................................................. 4, 5, 6, 9

ERISA § 502(g)(1) ................................................................................... 8, 9

ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1) ............................................... 7

ERISA § 514 ................................................................................................ 2

ERISA § 514(a) ........................................................................................... 3

ERISA § (g)(1) ............................................................................................ 1

**STATE STATUTES**

Employee Retirement Income Security Act of 1974 .................................... 2

**FEDERAL RULES**

Fed. Rule of Civ. P. 11 ............................................................................... 20

Fed. Rule of Civ. P. 55(c) ............................................................................ 6

Fed. Rule of Civ. P. 60(b)(1) ....................................................................... 6

Local Rule 7-3 .................................................................................................... 7

Local Rule 55-3 ................................................................................................ 19

Local Rule 55.................................................................................................... 11

Local Rule 60.................................................................................................... 11

**OTHER AUTHORITIES**

RICHARD M. PEARL, CALIFORNIA ATTORNEY FEE AWARDS §§ 12.2-12.8 (2d
ed. 2003) ...................................................................................................... 16

## I.    INTRODUCTION

This case highlights provider fraud and abuse that plagues the healthcare system.  After four years of litigation and defeating all claims against them and succeeding on their breach of contract counterclaim against Saks and their counterclaims against Madison Park, Defendants and Counter-Plaintiffs ILWU-PMA Welfare Plan ("Plan") and ILWU-PMA Welfare Plan Trustees ("Trustees") now move the Court, pursuant to ERISA section (g)(1), 29 U.S.C. § 1132(g)(1), and/or the Court's inherent powers, for an award of attorneys' fees reasonably incurred in their favor and against Plaintiffs and Counter-Defendants Lawrence Saks dba Reconstructive Surgery Associates dba Reconstructive Surgery Affiliates ("Saks") and Madison Park Surgery and Laser Center dba Madison Park Surgery Affiliates ("Madison Park") in the amount of  $1,325,230.00 for the defense of the claims and $245,368.50 for the prosecution of the counter-claims, for a total of $1,581,261.20 reasonably incurred in this action.

## II.    SUMMARY OF CLAIMS, FACTS AND FINDINGS

The Court's March 13, 2013 Order summarizes the relevant claims, facts and judicial findings.  Dkt. 204.  As stated therein, Saks' and Madison Park's First Amended Complaint sought allegedly unpaid reimbursements for medical treatments provided to members of the Plan.  Dkts. 134; 204.  In contrast, the Plan's and Trustees' First Amended Cross Complaint sought return of monies paid to Saks and Madison Park for alleged treatment of Plan members.  Dkt. 204.

In ruling on the two separate motions for summary judgment brought by the Plan and the Trustees (one on the claims, and one on the counterclaims), the Court has twice found that the contract pursuant to which Saks and Madison Park provided medical services for the benefit of the Plan terminated automatically and without notice in 1990 upon Saks' felony conviction.  Dkts. 136; 204.  The Court has twice found that Saks could not recover under the contract for medical procedures performed after 1990.  *Id*.  The Court has twice found that the Plan's

1

payments to Saks and Madison Park after this time did not waive the automatic or notice termination provisions of the contract because the Plan did not have knowledge of the events triggering termination. *Id.* The Court has twice found that the only reason the Plan and the Trustees Park were not aware of their right to terminate was because Saks breached the contract in failing to notify the Plan and the Trustees of the criminal charges and disciplinary actions against him, as the contract required. *Id.* The Court has also found that there is no genuine issue of material fact with respect to the breach of contract counterclaim, and that $468,608.16 was paid to Saks or the DBAs under the contract after it ended in 1990. Dkt. 204, at *4.

## III.   PROCEDURAL HISTORY

On March 10, 2009, Saks and Madison Park filed their Complaint against the Plan in the Superior Court of California, County of Los Angeles. Dkt. 1, Ex. 1.

On April 4, 2009, the Plan removed the Complaint to the Court. As stated in the Notice of Removal, the basis for removal was that the Complaint presents a civil action over which the Court had original and supplemental jurisdiction under 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. § 1132(e), in that it arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq. The Plan is an employee welfare benefit plan, as defined by ERISA section 3(1) and (3), 29 U.S.C. § 1002(3)(1) and (3), that provides medical, hospital, and other welfare benefits to eligible members of the International Longshore & Warehouse Union ("ILWU") and their dependents. Dkt. 1, at ¶ 2.

Plaintiffs' purported Second, Third, and Fourth Causes of Action against the Plan are preempted by ERISA sections 502(a)(1)(B) and 514, 29 U.S.C. §§ 1132(a) and 1144, because they seek to obtain the payment of benefits from the Plan, an ERISA-governed employee benefit plan, and to create an alternative mechanism for enforcing the terms of the Plan.

/ / /

2

Under ERISA Section 502(a)(1)(B), 29 U.S.C. §1132(a),  a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.  As stated in the Notice of Removal, Saks' and Madison Park's purported Second, Third, and Fourth Causes of Action, which attempt to assert state-law claims for Common Counts, Intentional Interference with Prospective Economic Relations, and Negligent Interference with Prospective Economic Relations, respectively, seek payment of employee benefits from the Plan on account of Saks' and Madison Park's alleged treatment of Plan participants and beneficiaries.[1]  Dkt. 1, at ¶ 3.  As such, ERISA 502(a)(1)(B), 29 U.S.C. §1132(a), completely preempts these claims.[2]

Moreover, ERISA section 514(a); 29 U.S.C. § 1144(a), preempts Saks' and Madison Park's claims relate to the Plan because they seek the payment of benefits from the Plan, and because they seek to hold the Plan liable for misapplying and misinterpreting its terms.  Dkt. 1, at ¶4.

---

[1] Specifically, Plaintiffs' Complaint alleged that the Plan: (i) refused to approve reasonably medically necessary medical care under the terms of the Plan; (ii) delayed approving reasonably necessary medical care under the terms of the Plan; (iii) failed and refused to carefully, fairly, promptly, and equitably process Plan participants' claims for benefits under the Plan; (iv) failed and refused to promptly, fully, and clearly advise Plan participants of the status of their claims for Plan benefits; and (v) unreasonably interpreted the terms of the Plan.  See Dkt. 1, Exhibit A, Complaint, ¶¶ 14, 19, and 32 (erroneously numbered 22).

[2] Stated succinctly, the doctrine of "complete preemption" holds that a state court action pleading only state law claims may be removed to federal court under ERISA if the complaint pleads a claim that could have been brought under ERISA Section 502(a)(1)(B) and does not plead a state law claim that is independent of ERISA.  *Marin Gen. Hosp. v Modesto & Empire Traction Co*., 581 F.3d 941, 945 (9th Cir. (Cal.) 2009); *Aetna Health Inc. v. Davilla,* 542 U.S. 200 (2004); *Metropolitan Life Ins. Co. v. Taylor* (1987) 481 U.S. 58.

3

As stated in the Notice of Removal, the Court has supplemental jurisdiction over Saks' and Madison Park's alleged First Cause of Action for breach of contract because it arises out of the same nucleus of operative fact as the alleged Second, Third, and Fourth Causes of Action, all of which assert the underlying fact that the Plan owes Plaintiffs payment for medical services allegedly rendered to Plan participants.  28 U.S.C. § 1367.  Dkt. 1, at ¶ 5

Therefore, removal was proper pursuant to 28 U.S.C. §§ 1331 and 1441.  *Id.* Saks and Madison Park did not move for remand or otherwise challenge removal.

On May 7, 2009, the Plan and the Trustees filed their Answer and Counterclaim.  Dkt. 8.

On March 17, 2010, counsel for Saks and Madison Park moved to withdraw, citing Saks' and Madison Park's insistence on asserting groundless claims or defenses.  Dkt. 27.  On April 29, 2010, the Court granted the motion.  Dkt. 28.

On February 16, 2011, Saks and Madison Park filed their First Amended Complaint ("FAC"), which was the operative complaint in January 2012, when the Court dismissed all claims asserted by Saks and Madison Park.  Dkt. 79.  In the FAC, Saks and Madison Park alleged the same purported claims against the Plan and the Trustees for breach of contract, breach of implied contract, book account, *quantum meruit* and quasi-contract against the Plan based on the same facts, *e.g.*, that they had provided medical services to Plan members and sought payment therefor.  *Id.*

On May 13, 2011, the Plan and the Trustees filed a motion for summary judgment against all claims brought by Saks and Madison Park.  Dkts. 93-100.

On April 4, 2011, the Plan and the Trustees filed their Second Amended Counterclaim ("SACC"), alleging counterclaims for fraud, breach of contract, restitution under ERISA 502(a)(3), and accounting under ERISA Section 502(a)(3).  Dkt. 86.

/ / /

On April 28, 2011, Saks and Madison Park filed a motion to dismiss the SACC.  Dkt. 87.  On the same date, counsel for Saks and Madison Park filed a motion to be relieved as counsel.  Dkt. 88.  This was the second set of counsel who had withdrawn from representing Saks and Madison Park.  Dkts. 27, 29.  Both sets of counsel sought to withdraw from the case, in part, because of Saks' and Madison Park's insistence "upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law."  Dkt. 27, at 7:1-3, 9:11-14; Dkt. 88, at 6:16-20, 8:3-7.  On July 12, 2011, the Court issued an order granting Saks' and Madison Park's counsel's motion to be relieved as counsel, and directed Madison Park to retain new counsel by August 31, 2011.  Dkts. 109 and 113.  Madison Park did not comply with the Court's order.

On December 15, 2011, the Court heard both Saks' and Madison Park's motion to dismiss the SACC and the Plan's and the Trustees' motion for summary judgment on the FAC.  Dkt. 133.  The Court denied the motion to dismiss the SACC in its entirety and took the motion for summary judgment on the FAC under submission.  *Id.*  On January 13, 2012, the Court granted the Plan and the Trustees' motion for summary judgment, disposing of all of Saks' claims.  Dkt. 136.  The Court also struck all of Madison Park's claims because Madison Park failed to comply with the Court's instruction to find substitute counsel and Saks, as a non-attorney, could not represent Madison Park in its claims against the Plan and the Trustees.  *Id.*  Accordingly, the only claims thereafter remaining were the Plan's and the Trustees' counterclaims against Saks and Madison Park, set forth in the SACC.

Saks and Madison Park failed to file answers to the SACC.  The Plan and the Trustees requested entry of default against Saks and Madison Park.  Dkts. 143, 144.  Default was entered on April 4, 2012.  Dkts. 145, 146.  On April 10, 2012, Saks attempted to file an answer to the SACC, Dkt. 147, but the Court struck the

5

answer because default had already been entered against him.  Dkt. 148.  Madison Park, for its part, made no attempt to hire counsel or file an answer.

On May 4, 2012, Saks filed a motion to set aside entry of default, which motion the Plan and the Trustees opposed.  Dkts. 149, 150.  On July 2, 2012, the Court granted Saks' motion to set aside entry of default.  Dkt. 153.  The Court allowed Saks to file his answer, but struck all of his affirmative defenses as non-meritorious.  *Id.*  The entry of default against Madison Park remained in place.

As of July 2, 2012, the only claims remaining at issue before the Court were the Plan's and the Trustees' counterclaims against Saks.  Saks's affirmative defenses based on statutes of limitations and related equitable doctrines such as estoppel and waiver had already been stricken by the Court.  Dkt. 136.  Trial was set for March 26, 2013.  Dkt. 153.

On October 1, 2012, the Court issued an order for Saks and Madison Park to show cause for their failure to file a court ordered mediation conference statement or to pay a monetary sanction.  Rather than show cause, Saks and Madison Park paid a $250 sanction, after which the Court took the hearing on the order to show cause off calendar.  See Dkts. 159, 166 and 167.

On January 12, 2013, Madison Park filed a motion for relief under Fed. Rule of Civ. P. 60(b)(1) from the Court's January 13, 2012 order (Dkt. 136) striking its claims and for relief under Fed. Rule of Civ. P. 55(c) from its default on the Counterclaims entered on April 4, 2012.  Dkt. 173.  On February 1, 2013, the Plan and the Trustees filed a motion for partial summary judgment against Saks on their counterclaims for breach of the Preferred Provider Agreement ("PPA").  Dkts. 175-184.  On March 4, 2013, the Court denied Madison Park's motion and granted the Plan's and the Trustees' motion.  Dkt. 204.

On March 21, 2013, the Plan and the Trustees filed an application for entry of default judgment against Madison Park.  Dkts. 205-210.  On May 20, 2013, the Court issued an order granting the application, finding that "the procedural

6

requirements have been met" and that "a sufficient evidentiary showing has been made in support of the requested damages award…" Dkt. 212. The court's order stated that "any objections to the proposed judgment, lodged on March 21, 2013, shall be filed no later than May 28, 2013." *Id.* No objections were filed.

On May 30, 2013, the Court entered judgment in the action, ordering that "Plaintiffs Saks and Madison Park take nothing under their First Amended Complaint, that Counter-Defendant Saks pay damages to Counter-Plaintiffs Plan and Trustees under the SACC in the amount of $468,608.16, that Counter-Defendant Madison Park pay damages to Counter-Plaintiffs Plan and Trustees under the SACC in the amount of 457,411.51, that judgment be entered in favor Defendants and Counter-Plaintiffs Plan and Trustees in this matter*, and that Defendants and Counter-Plaintiffs recover their costs and reasonable attorneys' fees in an amount to be determined."* Dkt. 213 (italics added).

This motion for an award of attorneys' fees is made following the conference of counsel pursuant to Local Rule 7-3 that took place on June 5, 2013.[3]

## IV.   ATTORNEYS' FEES SHOULD BE AWARDED UNDER ERISA

### A.   Legal Standard for an Award of Attorneys' Fees Under ERISA

ERISA section 502(g)(1),  29 U.S.C. § 1132(g)(1) provides that "in any action under this subchapter by ... a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of the action to either party."[4]  See, e.g., *Plumber, Steamfitter & Shipfitter Indus. Pension Plan & Trust v. Siemens Building Technologies Inc.,* 228 F.3d 964, 971 (9th Cir. 2000) (affirming award of attorneys' fees in favor of plaintiff trustees of an ERISA plan). Courts have awarded fees to ERISA plans themselves (as distinct from fiduciary

---

[3] See accompanying declaration of Ward Kallstrom ("Kallstrom Decl.") ¶ 12.

[4] The Trustees are the named fiduciary of the Plan, as that term is defined by ERISA section 3(16)(A)(i) and (21)(A), 29 U.S.C. §§ 1002(16)(A)(i) and (21)(A).

7

trustees) under ERISA section 502(g)(1), even though the plans themselves are not parties specifically identified in the statute.  See, e.g., *Estate of Shockley v. Alyeska Pipeline,* 130 F.3d 403, 407-08 (9th Cir.1997) (affirming award of attorneys' fees in favor of a defendant ERISA plan).

The Ninth Circuit has made clear that the availability of fees is not limited to participants and beneficiaries, and has approved the award of fees or partial fees to prevailing ERISA plans or their trustees.  *Id.*; see also *Honolulu Joint Apprenticeship & Training Committee of United Ass'n Local Union No. 675 v. Foster,* 332 F.3d 1234, 1240 (9th Cir. 2003), citing *Estate of Shockley,* 130 F.3d at 408 (affirming award of attorneys' fees to a defendant ERISA plan that successfully obtained summary judgment, and stating "We first disabuse the district court of the suggestion that we favor one side or the other in ERISA fee cases...").  In cases where ERISA plans have sought fees, the Ninth Circuit has referred to there being a "level playing field."  *Honolulu,* 332 F.3d 1240, citing *Cline v. Industrial Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1236 (9th Cir.2000) (recognizing the "level playing field").  These cases recognize both the remedial purpose of ERISA on behalf of beneficiaries and participants and the clear statutory language that makes fees available to either party.  ERISA section 502(g)(1), 29 U.S.C. § 1132(g)(1); *Honolulu,* 332 F.3d at 1240.

The Supreme Court has held that either party (plaintiffs or defendants) can be awarded fees and costs as long the party requesting the fees "has achieved some degree of success on the merits."  *Hardt v. Reliance Standard Life Ins. Co.,* 560 U.S. 242, 130 S.Ct. 2149, 2152, 176 L.Ed.2d 998 (2010).  However, a "lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue" is not needed for courts to determine whether some success on the merits resulted from the outcome of the litigation.  *Id.,* at 2158.

In the Ninth Circuit, once the district court has determined that a party to an ERISA case has achieved success on the merits to some degree, the district court

must consider "the *Hummell* factors." *Simonia v. Glendale Nissan/Infiniti Disability Plan,* 608 F.3d 1118, 1119 (9th Cir.2010) (affirming denial of fees absent evidence of bad faith, but recognizing discretion to award fees).

Under *Hummell v. S.E. Rykoff & Co*., 634 F.2d 446, 453 (9th Cir.1980), the factors to consider include: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Id*; see also, e.g., *Elliot v. Fortis Benefits Ins. Co.* 337 F.3d 1138 (9th Cir. 2003) (awarding fees to defendant under ERISA section 502(g)(1)); *Pomerleau v. Health Net of California,* 2012 WL 5829850, at *2-4 (C.D. Cal.) (granting plaintiffs' motion for attorneys' fees under ERISA section 502(g)(1); *Nash v. Life Ins. Co. of North America,* 2011 WL 2493738, *2 (S.D. Cal.) (same).

## B.    The Plan and the Trustees Have Succeeded on the Merits Against Saks and Madison Park

The Plan and the Trustees won summary judgment on all of Saks' claims against them.  The Plan and the Trustees won summary judgment on their breach of contract counterclaim against Saks, which alleged the same facts and the sought the same relief as their restitution counterclaim under ERISA section 502(a)(3). The Plan's and the Trustees' success is sufficient to support an award of attorneys' fees under ERISA section 502(g)(1).  See e.g., *Estate of Shockley* 130 F.3d 403 (awarding attorneys' fees to a defendant ERISA plan that won on summary judgment).

The Plan and the Trustees succeeded on Madison Park's claims against them because the Court struck Madison Park's claims for relief when it failed to secure counsel.  Dkt. 136.  The Plan and the Trustees also succeeded on their

9

counterclaims against Madison Park when the Court granted default judgment against Madison Park.  Dkt. 212.  See, e.g., *IO Group, Inc. v. Jordan*, 2010 U.S. Dist. LEXIS 61722 (N.D. Cal. May 27, 2010) ("Plaintiff's success on the merits is established by the entry of default judgment against Defendant"), citing *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir. 1978) ("Upon entry of a default judgment, facts alleged to establish liability are binding upon the defaulting party").

On May 30, 2013, the Court entered its final judgment in favor of the Plan and the Trustees and against Saks and Madison Park.  Dkt. 213.  Indisputably, the Plan and the Trustees have succeeded on the merits against Saks and Madison Park.

The Plan and the Trustees request that liability for attorneys' fees be joint and several as between Saks and Madison Park.  *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1075 (N.D. Cal. 2010) ("Under both federal and California law, liability among defendants for a successful plaintiff's attorney fees is generally joint and several").  Saks is the 99.9% owner of Madison Park, and the attorney fees incurred in defending and prosecuting the actions against Saks and Madison Park pertained to overlapping claims, facts and legal arguments.  Further, it has "been held proper for a court to award fees against one defendant for time spent litigating against another."  *Id.*, citing *Californians for Responsible Toxics Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 976 (1989).  Thus, under these circumstances, the Plan and the Trustees request the Court find joint and several liability for the attorney fees.

### C.   The *Hummell* Factors Favor an Attorneys' Fees Award to the Plan and the Trustees

Having established success, Courts then turn to the *Hummell* factors, cited above, to determine whether a party has a right to fees, but no single factor "is necessarily decisive, and some may not be pertinent in a given case."  *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir.1984).  Each factor is discussed in turn below.

### 1. Saks' and Madison Park's Culpability and Bad Faith

In determining whether to award attorneys' fees, Courts consider the degree of the opposing parties' culpability and bad faith. *Hummell,* 634 F.2d 453.

Here, the record evidence and Court orders (e.g., Dkts. 29, 88, 109, 113; 136; 145, 146, 148, 153, 159, 167, 196, 204, 212) establish that Saks and Madison Park delayed in seeking counsel, failed to comply with orders of the Court requiring them to obtain counsel and to file a mediation statement, and repeatedly asserted legal claims and defenses that were without merit and were summarily rejected. Saks' and Madison Park's bad faith and culpable litigation tactics caused repeated delays and disruption, as well as significant burdens, time and expense to the Plan, the Trustees and the Court for nearly four years.

The Court's order of March 13, 2013 denying reinstatement of Madison Park's claims under Rule 60 is illustrative. Dkt. 204. In that order, the Court emphasized that Saks' and Madison Park's conduct constituted "unreasonable delay under the operative facts and circumstances." Dkt. 204, at *6. The Court stated that there was no justification to impose the burdens of a continued trial on the Plan and the Trustees "given the amount of time the action has been pending, the numerous opportunities Plaintiffs [Saks and Madison Park] were given to obtain counsel timely, and the significant expenses that the Plan and the Trustees have already incurred in defending Saks' and Madison Park's claims." *Id.* The Court stated that "there is no showing here of excusable neglect."

In the same order, the Court also denied Madison Park's motion under Rule 55 to set aside the default against it on the counterclaims. The Court ruled that "set aside is also unjustified because [Saks' and Madison Park's] culpable conduct let to the default." Dkt. 204, at *6. The Court ruled that there is "considerable evidence of prejudice to the non-moving parties and culpable conduct that led to the default." *Id.* The Court concluded that "[t]his case is one that presents extreme

1   circumstances.  Plaintiffs [Saks and Madison Park] have not proceeded in a timely,

2   appropriate or reasonable manner."  Dkt. 204 at *7.

3          This factor weighs heavily in favor of an award of attorneys' fees.

4          **2.     Saks and Madison Park Have Not Demonstrated an
                   Inability to Satisfy a Fee Award**

5

6          In determining whether to award attorneys' fees, the Court is also to

7   consider the ability of the opposing parties to satisfy an award of fees.  *Hummell,*

8   634 F.2d at 453.  Saks is a former medical director and surgeon, who did business

9   as Madison Park.  A documented expert in billing fraud, he retained sufficient

10  funds before his medical license was revoked to fund this litigation through three

11  sets of lawyers.  There is no evidence that he is unable to satisfy an award of

12  attorneys' fees.  This factor weighs in favor of a fee award.

13         **3.     An Appropriate Award of Fees Would Strongly Deter
                   Future Health Care Fraud and Abuse**

14

15         In determining whether to award attorneys' fees, the Court is also to

16  consider whether an award of fees against the opposing parties would deter others

17  from acting the same way under similar circumstances.  *Hummell,* 634 F.2d at 453.

18         Health care fraud and abuse is a national epidemic.  Here, the Court has a

19  strong interest in deterring frivolous lawsuits and bad faith conduct.  The Plan and

20  its Trustees have a strong interest in deterring health care fraud and abuse against

21  the Plan by providers such as Saks and Madison Park.  More generally, there is a

22  strong public policy interest in deterring provider fraud and abuse against medical

23  plans, insurers and other payors.  This factor weighs heavily in favor of an award

24  of attorneys' fees.

25         **4.     An Award of Attorneys' Fees Would Benefit ERISA Plan
                   Participants Because it Would Increase Plan Assets
                   Available to Pay Legitimate, Covered Claims**

26

27         In determining whether to award attorneys' fees, Courts also consider

28  whether the parties requesting fees sought to benefit all participants and

beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA. *Hummell,* 634 F.2d at 453.

An award of attorneys' fees here is appropriate here because the Plan and the Trustees sought to benefit all ERISA Plan participants and beneficiaries by seeking to deter this fraud and abuse, and future fraud and abuse, which fraud and abuse depletes Plan assets available to pay legitimate claims. An award of attorneys' fees here would directly benefit the Plan's participants because a fee recovery by the Plan will increase Plan assets for paying benefits on legitimate, covered claims. An award of fees would also benefit plan participants generally by discouraging fraudulent health care billing. This factor weighs heavily in favor of an award of attorneys' fees.

### 5.    The Relative Merits Weigh Heavily in Favor of an Attorneys' Fees Award

In determining whether to award attorneys' fees, courts also consider the relative merits of the parties' positions. *Hummell,* 634 F.2d at 453.

Saks, the 99.9% owner of Madison Park[5], has been criminally convicted on 16 federal felony fraud counts. Two separate sets of counsel withdrew from representation of Saks and Madison Park that included Saks' and Madison Park's insistence on asserting groundless claims or defenses. Dkts. 27 and 88.

The Court has ruled that the Plan's and the Trustees' claims and defenses had merit, and that Saks' and Madison Park's claims and defenses were without merit. Dkts. 136; 204. The Plan and the Trustees won on their motion for summary judgment on Saks' claims. Dkts. 136. The Court struck Saks' and

---

[5] See Response of Lawrence Saks M.D., to Interrogatories, Set No. 1, at Interrogatory No. 2, attached as Exh. 1 to the Declaration of Kevin J. Lesinski in opposition to the motion to reinstate claims for relief and set aside default: "Madison Park Surgery Center and Laser Center -- Dr. Saks was the 99.9% owner of this partnership and Jeffrey Saks was a .1% owner of this entity at all relevant times." Dkt. 188.

Madison Park's affirmative defenses—statute of limitations, laches, unclean hands, and waiver and estoppel—to the Plan's and the Trustees' Counterclaims because the Court found these defenses had no merit.  Dkt 136; Dkt. 153, at *2.  The Plan and the Trustees thereafter won their motion for summary judgment on the breach of contract counterclaim against Saks.  Dkt. 204.  The Court entered default judgment against Madison Park.  Dkt. 212.

On May 30, 2013, the Court entered judgment in the action, ordering that Plaintiffs Saks and Madison Park take nothing under their First Amended Complaint, that Saks pay damages to the Plan and Trustees in the amount of $468,606.16, and that Madison Park pay damages to the Plan and Trustees in the amount of $457,411.51.  Dkt.  213.

This factor weighs heavily in favor of an award of attorneys' fees.

### D.    The Requested Award of Attorneys' Fees is Reasonable

#### 1.    The Loadstar-Adjustment Method

In ERISA cases, a "lodestar" method is used to calculate attorneys' fees. *Van Gerwen v. Guarantee Mut. Life Co.,* 214 F.3d 1041, 1045 (9th Cir.2000). Using this approach, courts "multiply the number of hours reasonably expended by the attorney(s) on the litigation by a reasonable hourly rate."  *McElwaine v. U.S. West, Inc*., 176 F.3d 1167, 1173 (9th Cir.1999); *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Pomerleau,* 2012 WL 5829850, at *2-4.

 "A court may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar.  The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Nash,* 2011 WL 2493738, at *3, citing *Van Gerwen v.*

14

*Guarantee Mut. Life Co*., 214 F.3d at 1045, quoting *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. 1933, 76 L.Ed.2d 40.  Here, the Plan and the Trustees do not seek a multiplier, so the determination of an appropriate multiplier need not be undertaken.

"The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed."  *Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 945–46 (9th Cir. 2007).  See also *Carson v. Billings Police Dep't,* 470 F.3d 889, 891 (9th Cir.2006) (stating that the "burden of submitting evidence of the hours worked and the rate paid" falls on the party seeking the award of attorneys' fees).

"[T]he burden of producing a sufficiently cogent explanation [for reducing an excessive fee request] can mostly be placed on the shoulders of the losing parties, who not only have the incentive, but also the knowledge of the case to point out such things as excessive or duplicative billing practices.  If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut."  *Nash,* 2011 WL 2493738 at *3, citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008).

The Plan and the Trustees seek to recover the amount billed to the Plan and the Trustees for the defense and prosecution of this case.  This amount reflects the number of hours that were expended by the attorneys, paralegals and other non-attorneys in this case multiplied by the hourly rates of each attorney.  For the reasons set forth more fully below, both the hours spent by the attorneys and non-attorneys on this case and their respective hourly rates are reasonable.

### 2.    The Number of Hours Spent Was Reasonable

Where a party prevails in its defense of all claims, as the Plan and the Trustees did here, attorney's fees for all time reasonably spent in attaining the successful result is recoverable, including the fees for the time necessary to litigate

15

a fee claim.  *Hensley v. Eckhart*, 461 U.S. 424, 435 (1983); *Serrano v. Unruh,* 32 Cal.3d 621, 639 (1982) (*Serrano IV*); *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co*., 460 F.3d 1253, 1256-1257 (9th Cir. 2006) ("'reasonable attorney's fee' provided for by statute should compensate the work of paralegals . . . secretaries, messengers, librarians . . . and others whose labor contributes to work product for which an attorney bills her client").

Such time includes time spent in all types of activities that a prudent lawyer may reasonably employ in the prosecution or defense of a case, including pre-litigation activities, discovery and investigation, conferring with clients and counsel, court appearances, research, briefing, drafting and revising pleadings, settlement negotiations, waiting in court for assignment to a court room, necessary travel, and preparation of the attorneys' fees application.  *See* RICHARD M. PEARL, CALIFORNIA ATTORNEY FEE AWARDS §§12.2-12.8 (2d ed. 2003).

Here, the hours expended by counsel and their staff are reasonable.  This case was extensively litigated over the course of four years and was not the typical default case.  During the course of this contentious and complex case, counsel for the Plan and the Trustees vigorously defended the meritless claims made by Saks and Madison Park by, among other things: seeking, obtaining and reviewing thousands of pages of patient files; propounding and responding to numerous sets of written discovery and engaging in motion practice regarding inadequate responses to discovery; conducting numerous witness interviews to investigate the claims Saks and Madison Park made; and briefing a successful motion for summary judgment.  The Plan and the Trustees also filed a counterclaim against Saks and Madison Park to recoup monies paid for alleged treatment of Plan members, opposed Saks' and Madison Park's motion to compel arbitration, opposed Saks' and Madison Park's motion to dismiss, filed motions for entry of default against Saks and Madison Park, opposed Saks' and Madison Park's motion to set aside entry of default, extensively briefed a successful motion for partial

16

summary judgment, and briefed a successful application for entry of default judgment.  Kallstrom Decl. ¶ 13, Exhs. C-D; Penrod Decl. ¶ 17, Exhs. A-D; Hwang Decl. ¶ 7, Exhs. A-B.

The Court has now entered its final judgment in favor of the Plan and the Trustees against Saks and Madison Park.  One cannot posit a more complete victory; and such a result counsels an award of fees for all hours reasonably expended.  The Plan and the Trustees seek to recover $1,570,598.70 in fees for the time necessary to bring this case to its resolution.

### 3.      Counsel's Hourly Rates Are Reasonable

The hourly rates charged to the Plan's and the Trustees' are reasonable for a complex case requiring ERISA expertise.  To determine reasonableness of an attorney's hourly rate, the court looks to the billing rates that are being charged for similar work in the relevant community.  *Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 946 (9th Cir.2007).  But see *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990) (prevailing market rates can be shown by affidavits from the party's attorney and other attorneys in the community).  The rates that clients are willing to pay for the attorney's services in that marketplace are presumed to be reasonable.  *Tolentino v. Friedman*, 46 F.3d 645, 652-653 (7th Cir. 1995).

The relevant communities for determining the prevailing market rate for the services provided in this case are the national communities of ERISA and litigation expertise.  The hourly rates sought by counsel in this case are well within the prevailing market rates in these communities.  The Declarations of Ward Kallstrom, James Penrod and Christine Hwang,  all very experienced attorneys with knowledge of the abilities and practices of other ERISA and civil litigation lawyers and the rates being charged for comparable work in the community, demonstrate that the hourly rates charged by the attorneys and paralegals who worked on this case are reasonable.  Kallstrom Decl. ¶ 17-18; Penrod Decl. ¶ 23;

17

Hwang Decl. ¶ 11.  In fact, Mr. Kallstrom, Mr. Penrod and Ms. Hwang all testify that the hourly rates charged by the attorneys and paralegals in this case fall well below the prevailing rates charged by their firms for other matters.  *Id.*

For example, the 2013 standard hourly rate of Mr. Kallstrom, one of the nation's most highly-regarded ERISA attorneys with over 30 years of experience, is $810.00/hour.  His hourly rate for the defense of this case ranged from $450.00/hour (in 2010) to $535.00/hour (in 2013) and $250.00/hour for prosecuting the Plan and the Trustees' counterclaims.  Kallstrom Decl. ¶ 17.  For example, the 2013 standard hourly rate of Mr. Braunstein, a Senior Associate with 10 years of litigation experience, is $490/hour, and his hourly rate for the defense of this case was $330/hour and $250/hour for the prosecution of the Plan and the Trustees' counterclaims.  Kallstrom Decl. ¶ 17.

In 2011 and 2012, the Central District of California found fees ranging from $350/hour for a fifth-year associate to $600/hour for partners with 15 plus years of ERISA experience reasonable.  *See Parker v. Vulcan Materials Co. Long Term Disability Plan*, 2012 U.S. Dist. LEXIS 36724 (C.D. Cal. Feb. 16, 2012) ($600/hour was a reasonable rate in 2012 for an attorney with 40 years of experience who was also an ERISA specialist , $350/hour was reasonable for an associate with five years of experience); *Pomerleau v. Health Net of Cal., Inc*., 2012 U.S. Dist. LEXIS 164275 (C.D. Cal. Nov. 15, 2012) ($600/hour was a reasonable rate in 2011 for an attorney with 15 years of ERISA experience); *Dine v. Metro. Life Ins. Co.*, 2011 U.S. Dist. LEXIS 141975 (C.D. Cal. Dec. 9, 2011) ($600/hour was a reasonable rate in 2011 for two partners with 29 years of experience practicing law (and 15 years of experience focusing on ERISA cases), $500/hour was reasonable for Senior Associates with 14-15 years of experience, and $175/hour was reasonable for the firm's paralegals).  Accordingly, the rates sought here are well within the reasonable range as demonstrated by the attorney

declaration and the recent attorneys' fees orders from the Central District of California.  Kallstrom Decl. ¶ 18.

For the reasons set forth above and in the attorney declarations filed concurrently herein, an award of attorneys' fees in the amount of $1,325,230.00 for the defense of the claims in this action and $245,368.50 for the prosecution of the counter-claims, for a total of $1,570,598.70, is an appropriate payment for the time, effort and skill of the counsel devoted to this litigation.

**4.    The Court Should Set an Award of Fees in Excess of the Schedule Set Forth in Local Rule 55-3 For Prosecuting the Counter-Claims Against Madison Park to Default Judgment**

With respect to the portion of total fees attributable to obtaining the default judgment against Madison Park, the Plan and the Trustees request that the Court fix the award of attorneys' fees in a fair and reasonable amount in excess of the limited amounts set forth in the fee schedule in Local Rule 55-3.  Pursuant to Local Rule 55-3, the Court shall hear the request and render judgment for such fee as the Court may deem reasonable.

Here, the facts and circumstances presented justify a fee award far in excess of the limited amounts provided under the default fee schedule.  This was not a simple case of default having been taken against an absent, non-participating party.  Rather, this case was extensively litigated for over four years, with Madison Park having been an active participant during most of the proceedings.  Madison Park was previously represented by counsel, appeared in the action and actively participated in several rounds of motion practice including, but not limited to, a motion to compel arbitration (Dkt. 10), a motion to dismiss (Dkt. 87), a motion to set aside entry of default (Dkt. 149), and a motion for relief from default (Dkt. 173).  Kallstrom Decl. ¶ 19.

Consequently, the Plan and the Trustees were forced to incur significant attorneys' fees in prosecution of its claims, including but not limited to fees

19

incurred in opposing each of the above referenced motions (see e.g., Dkts. 13, 117, 150, and 187) well in excess of the amounts set forth in the fee schedule in order to ultimately obtain default judgment against Madison Park. Accordingly, with respect to the portion of the Plan's and the Trustees' overall fees incurred that are attributable to prosecution of the counterclaims against Madison Park that ultimately resulted in default judgment (Dkt. 212), an award in excess of the fee schedule set forth in the Local Rules is appropriate.

## V. THE COURT SHOULD USE ITS INHERENT POWERS TO AWARD THE PLAN AND THE TRUSTEES THEIR ATTORNEYS' FEES

Independently of ERISA, this Court has authority and discretion to award attorneys' fees under its inherent sanction powers.

In *Chambers v. NASCO*, Inc., 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the Supreme Court held that federal district courts possess the inherent power to sanction bad-faith conduct in litigation when that conduct falls outside the scope of Federal Rule of Civil Procedure 11 or 28 U.S.C. § 1927. There, a party engaged in several years of vexatious litigation tactics in an effort to thwart the jurisdiction of the court. *Id.* The district court sanctioned the defendant approximately $1 million in attorneys' fees. *Id.* Affirming, the Supreme Court stated:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

*Id.* at 43, 111 S.Ct. at 2132 (citations omitted).

/ / /

The Court further explained that federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. *Id,* at 33, 111 S. Ct. at 2126.  In invoking the inherent power to punish conduct that abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction, which may range from dismissal of a lawsuit to an assessment of attorneys' fees. *Id.*  Although the "American Rule" prohibits the shifting of attorneys' fees in most cases, an exception allows federal courts to exercise their inherent power to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as when the party practices a fraud upon the court, or delays or disrupts the litigation or hampers a court order's enforcement.  *Id;* see also *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980);  *In re Deville*, 290 B.R. 483, 494-499 (9th Cir. 2002) (awarding reasonable attorneys' fees as sanction for improper filings in attempt to delay trial) *Fink v. Gomez,* 239 F.3d 989, 992 (9th Cir.2001) (recognizing that district courts have "inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct."); *In re Rainbow Magazine, Inc. v. Unified Capital Cor*p., 77 F.3d 278 (9th Cir. 1996) (holding that the district court had authority under its inherent powers to impose sanction of $249,389.31 for bad faith filings); *Mark Industries, Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (9th Cir. 1995) (recognizing that "an assessment of attorneys' fees is undoubtedly within a court's inherent powers…").

As explained above in Section 4.C.1., the record evidence and Court orders e.g., Dkts. 29, 88, 109, 113; 136; 145, 146, 148, 153, 159, 167, 196, 204, 212) establish that that Saks and Madison Park delayed in seeking counsel, failed to comply with orders of the Court requiring them to obtain counsel and to file a mediation statement, and repeatedly asserted legal claims and defenses that were without merit and which were summarily rejected.  Saks' and Madison Park's bad

21

faith and culpable litigation tactics caused repeated delays and disruption, as well as significant burdens, time and expense to the Plan, the Trustees and the Court for nearly four years.  Indeed, the Court has itself already ruled that Saks and Madison Park have engaged in unreasonable and culpable conduct and that "[T]his case is one that presents extreme circumstances.  Plaintiffs have not proceeded in a timely, appropriate, reasonable or cooperative manner."  Dkt. 204, at *7.

Accordingly, the Court should exercise its inherent sanctioning power and order Saks and Madison Park to pay the Plan's and the Trustees' attorneys' fees reasonably incurred, in the amount of $1,570,598.70, as set forth in Section 4.D., above and detailed in the accompanying declarations.

## VI.   CONCLUSION

Therefore, the Plan and the Trustees request that the Court grant this motion for an award of attorneys' fees in their favor and against Saks and Madison Park in the amount of $1,325,230.00 for the defense of the claims and $245,368.50 for the prosecution of the counter-claims, for a total of $1,570,598.70, plus pre and post judgment interest.

Dated:     June 13, 2013          SEYFARTH SHAW LLP

By _____ /s/ _____
D. Ward Kallstrom
Kevin J. Lesinski
Attorneys for ILWU-PMA Welfare Plan
and ILWU-PMA Welfare Plan Trustees

Dated:     June 13, 2013          LEONARD CARDER, LLP

By _____ /s/ _____
Christine S. Hwang
Attorneys for ILWU-PMA Welfare Plan
and ILWU-PMA Welfare Plan Trustees

Dated:     June 13, 2013          MORGAN, LEWIS & BOCKIUS LLP

By _____ /s/ _____
James N. Penrod
Attorneys for ILWU-PMA Welfare Plan
and ILWU-PMA Welfare Plan Trustees

15700726v.8